UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
NEW ALBANY DIVISION

| | | |
|---|---|---|
| BRUCE HERDT, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | 4:10-cv-140-WGH-TWP |
| | ) | |
| THE CIVIL CITY OF JEFFERSONVILLE, | ) | |
| INDIANA, THE COMMON COUNCIL | ) | |
| FOR THE CITY OF JEFFERSONVILLE, | ) | |
| INDIANA, RON GROOMS, NATHAN | ) | |
| SAMUEL, MIKE SMITH, ED ZASTAWNY, | ) | |
| KEITH FETZ, CONNIE SELLERS, | ) | |
| BARBARA WILSON, and MAYOR | ) | |
| THOMAS R. GALLIGAN, | ) | |
| | ) | |
| Defendants. | ) | |

**ENTRY ON DEFENDANTS'
MOTION TO DISMISS AMENDED COMPLAINT**

This matter is before the Honorable William G. Hussmann, Jr., United States Magistrate Judge,[1] on Defendants' Motion to Dismiss Amended Complaint filed July 1, 2011. (Docket Nos. 37-38). Plaintiff filed his Response on July 13, 2011. (Docket Nos. 41-42). No reply brief was filed.

**I. Legal Standard**

In reviewing a motion to dismiss under Rule 12(b)(6), the court must take the facts alleged in the complaint as true and draw all reasonable inferences in

---

[1]The parties consented to Magistrate Judge jurisdiction (Docket No. 23), and on February 18, 2011, United States District Judge Tanya Walton Pratt issued an Order referring the case to this Magistrate Judge (Docket No. 24).

favor of the plaintiff. The complaint must contain only "a short and plain statement of the claim showing that the pleader is entitled to relief," FED. R. CIV. P. 8(a)(2), and there is no need for detailed factual allegations. However, the statement must "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests," and the "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Pisciotta v. Old Nat. Bancorp,* 499 F.3d 629, 633 (7th Cir. 2007)(quoting *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 555, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007)).

**II. Background**

On August 6, 2007, the Common Council for the City of Jeffersonville, Indiana ("Common Council") adopted Ordinance 2007-OR-10, annexing certain territory into the City of Jeffersonville, Indiana. (Brief in Support of Motion to Dismiss at 1). With the annexation of said territory, the City of Jeffersonville attained a population in excess of 35,000 people, according to the population data gathered in the 2000 federal decennial census. (*Id.*). Pursuant to Indiana Code § 36-4-1-1, a city with a population of 35,000 to 499,999 is defined as a second class city. (*Id.* at 1-2). Section 36-4-1-1.1 of the Indiana Code provides that a city that attains a population of 35,000 remains a third class city until and unless that city adopts second class status by ordinance. (*Id.* at 2).

The City of Jeffersonville obtained second class status, pursuant to Ordinance 2009-OR-45, which was adopted on November 16, 2009. (Brief in Support of Motion to Dismiss at 2). Upon the City of Jeffersonville becoming a

second class city, the Common Council was obligated, pursuant to Section 36-4-6-3 of the Indiana Code, to adopt an ordinance to divide the city into six districts. (*Id.*). The Common Council adopted such an ordinance, dividing the City of Jeffersonville into six districts. (*Id.*).

Plaintiff filed his Amended Complaint essentially alleging that the adoption of the redistricting ordinance violated the Equal Protection Clause of the Fourteenth Amendment because "the Common Council knowingly relied upon outdated and inaccurate population figures derived from the 2000 US Decennial Census." (Amended Complaint ¶ 16).

## III. Discussion

### A. Standing

As a threshold issue, this court must first determine whether or not Plaintiff has a justiciable claim; specifically whether or not Plaintiff has standing to bring this Equal Protection claim. Article III of the United States Constitution confines the judiciary power of the federal courts and sets out the requirement for Plaintiff to invoke such power by alleging "cases" and "controversies." *See Lujan v. Defenders of Wildlife,* 504 U.S. 555, 560, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992); *O'Sullivan v. City of Chicago,* 396 F.3d 843, 853 (7th Cir. 2005). The necessary requirement of actual case and controversy is also known as the principle of justiciability. *O'Sullivan,* 396 F.3d at 853; *Tobin for Governor v. Illinois State Bd. of Elections,* 268 F.3d 517, 527 (7th Cir. 2001). In *O'Sullivan,*

the Seventh Circuit stated that "standing is an aspect of justiciability." *O'Sullivan,* 396 F.3d at 853.

Whether or not the Plaintiff has standing to bring an Equal Protection claim depends on whether he "has a personal stake in the outcome of the controversy and whether the dispute touches upon the legal relations of parties having adverse legal interests." *Flast v. Cohen,* 392 U.S. 83, 101, 88 S.Ct. 1942, 20 L.Ed.2d 947 (1968)(internal citations and quotations omitted). The federal court must ensure that adverseness between parties exists which would eliminate reaching beyond the federal court's power into the state and local governmental process. *O'Sullivan,* 396 F.3d at 854. Therefore, Plaintiff has the burden to demonstrate that the challenged governmental actions had a direct effect on him apart from claimed interest of third parties or that he is in immediate danger of sustaining such injury. *See Lujan,* 504 U.S. at 563; *City of Los Angeles v. Lyons,* 461 U.S. 95, 101-02, 103 S.Ct. 1660, 75 L.Ed.2d 675 (1983).

The United States Supreme Court has explained that "the irreducible constitutional minimum of standing contains three elements." *Lujan,* 504 U.S. at 560. To establish the standing requirement, the Plaintiff must demonstrate: (1) that he suffered an "injury in fact," which is described as an invasion of a legally protected interest, that is concrete and particularized, actual or imminent, and not conjectural or hypothetical; (2) that there is a causal

connection between the injury and the conduct complained; and (3) that it is likely that the injury will be redressed by a favorable decision. *Id.* at 560-61 (internal citations and quotations omitted). The Supreme Court stated that "a generalized grievance against allegedly illegal governmental conduct" is insufficient for a standing requirement and has recognized a higher degree of applicability of the "rule against generalized grievances" in the case of Equal Protection claims. *U.S. v. Hays,* 515 U.S. 737, 743, 115 S.Ct. 2431, 132 L.Ed.2d 635 (1995).

Furthermore, the Supreme Court held that the question of standing in a particular case does not depend on the merits of a plaintiff's claim. *Warth v. Seldin,* 422 U.S. 490, 500, 95 S.Ct. 2197, 45 L.Ed.2d 343 (1975). "Essentially, the standing question . . . is whether the constitutional or statutory provision on which the claim rests properly can be understood as granting persons in the plaintiff's position a right to judicial relief." *Id.*

In this case, Plaintiff states in his Amended Complaint that he is a permanent resident of the City of Jeffersonville, is a registered voter in Clark County, Indiana, and resides within the territory annexed into the City of Jeffersonville by the Annexation Ordinance, in the territory designated as the sixth councilmanic district by the Redistricting Ordinance. Plaintiff alleges that he presented the information about the population figures to the Common Council, but the Common Council disregarded the figures because they had been derived by the Plaintiff, in part, by the use of engineering techniques which

included, but were not limited to, the use of aerial photography images.  Plaintiff argues that as a result of the Common Council's failure to adopt a Redistricting Ordinance making a proportionate division of population in a manner required by the United States Constitution and Ind. Code § 36-4-6-3(b)(4), the Common Council and the Mayor have abridged the rights of the Plaintiff and all other citizens of the sixth councilmanic district.  Plaintiff alleges that these actions have deprived all citizens of the sixth councilmanic district of their equal protection rights, because they will not have their vote weighted equally with those of other citizens in the election of members of the council elected by district (rather than at large).  Plaintiff further asserts that he and all other citizens residing in the sixth councilmanic district will continue to be deprived of their right to have their votes weighted equally with those of other citizens in the election of members of the council unless the court grants him a review.  Plaintiff also claims that he and all other citizens and registered voters in the sixth councilmanic district of the City of Jeffersonville will suffer irreparable and unconstitutional dilution of their votes in the 2011 election unless this court compels the division of the city precincts into six more or less equal councilmanic districts.

In light of the principles stated by the Supreme Court in *Lujan,* the court concludes as follows.  First, Plaintiff has asserted that he suffered an invasion of a legally protected interest.  In particular, Plaintiff's right to have his vote weighted equally with those of other citizens in the election of members of the

council is concrete and particularized, actual, and imminent. Second, Plaintiff alleges that there is a causal connection between the injury and the conduct of the Common Council. Third, it is likely that the relief Plaintiff seeks would remedy his alleged injury. The court, therefore, concludes that Plaintiff does have standing to bring his Equal Protection claim.

### B. Plaintiff's Equal Protection Claim

The Equal Protection Clause of the Fourteenth Amendment clearly establishes that "the fundamental principle of representative government in this country is one of equal representation for equal numbers of people . . . ." *Reynolds v. Sims,* 377 U.S. 533, 560-61, 84 S.Ct. 1362, 12 L.Ed.2d 506 (1964). This principle has come to be known as "one-person, one-vote." This guarantee "extends not only to congressional districting plans . . . but also to local government apportionment." *Board of Estimate of City of New York v. Morris,* 489 U.S. 688, 692, 109 S.Ct. 1433, 103 L.Ed.2d 717 (1989). In order to meet the standards of one-person, one-vote, a state or local government "must make an honest and good-faith effort to construct its districts as nearly of equal population as is practicable, but ... absolute equality [is] a practical impossibility." *Gaffney v. Cummings,* 412 U.S. 735, 743, 93 S.Ct. 2321, 37 L.Ed.2d 298 (1973)(internal quotations omitted).

The question presented by Plaintiff is whether or not a local government must conduct a new population count in between decennial censuses in order to comply with the Equal Protection Clause's requirement of one-person, one-vote. The Seventh Circuit in *Political Action Conference of Illinois v. Daley,* 976 F.2d

335, 339-40 (7th Cir. 1992), concluded that the use of census numbers (even "old" census numbers which had very recently been superceded by a new census) satisfied the requirements of the Equal Protection Clause. The Seventh Circuit explained that "decennial reapportionment satisfies the Constitution, even though there undoubtedly will be some imbalance in the population of each district towards the end of the decennial period." *Id.* The Seventh Circuit relied on the Supreme Court's reasoning in *Reynolds*, which explained:

> Decennial reapportionment appears to be a rational approach to readjustment of legislative representation in order to take into account population shifts and growth. Reallocation of legislative seats every 10 years coincides with the prescribed practice in 41 of the States, often honored more in the breach than the observance, however . . . . Limitations on the frequency of reapportionment are justified by the need for stability and continuity in the organization of the legislative system, although undoubtedly reapportioning no more frequently than every 10 years leads to some imbalance in the population of districts toward the end of the decennial period and also to the development of resistance to change on the part of some incumbent legislators. In substance, we do not regard the Equal Protection Clause as requiring daily, monthly, annual or biennial reapportionment, so long as a State has a reasonably conceived plan for periodic readjustment of legislative representation. While we do not intend to indicate that decennial reapportionment is a constitutional requisite, compliance with such an approach would clearly meet the minimal requirements for maintaining a reasonably current scheme of legislative representation. And we do not mean to intimate that more frequent reapportionment would not be constitutionally permissible or practicably desirable. But if reapportionment were accomplished with less frequency, it would assuredly be constitutionally suspect.

*Reynolds*, 377 U.S. at 583-84. While use of census data as the means for drawing districts is constitutionally sound, the failure to use such data could be

suspect. *Kirkpatrick v. Preisler,* 394 U.S. 526, 535, 89 S.Ct. 1225, 22 L.Ed.2d 519 (1969). The Supreme Court, in *Kirkpatrick,* acknowledged that there could be circumstances in which a legislative body took into account "projected population shifts" in drawing legislative districts, thereby disregarding the actual census data:

> Situations may arise where substantial population shifts over such a period can be anticipated. Where these shifts can be predicted with a high degree of accuracy, States that are redistricting may properly consider them. By this we mean to open no avenue for subterfuge. Findings as to population trends must be thoroughly documented and applied throughout the State in a systematic, not an ad hoc, manner.

*Kirkpatrick,* 394 U.S. at 535.

Plaintiff, in this case, acknowledges that Defendants used the census numbers as a basis for reapportionment. Plaintiff argues that the use of the census figures was not constitutionally permissible because the census numbers no longer accurately reflected the true population of the six districts. Plaintiff's argument is without merit. Under the one-person, one-vote doctrine, Plaintiff must allege, using the actual 2000 census numbers that the Common Council used, that the districts were improperly reapportioned.[2] The fact that the

---

[2] In fact, as discussed in *Kirkpatrick,* if the Common Council had done as Plaintiff requested and actually disregarded the 2000 census numbers, their actions could have, themselves, been unconstitutional. Plaintiff alleges that population trends in the sixth councilmanic district caused the actual numbers to be different from the 2000 census numbers. According to *Kirkpatrick,* the only constitutional way that these changes in population trends could have been taken into account in redistricting would have been by conducting a thoroughly documented, systematic, state-wide count. However, nothing in *Kirkpatrick* requires the use of new population numbers instead of the census numbers.

Common Council used the 2000 census as the basis for reapportioning the six councilmanic districts is constitutionally sound under *Daley*. Because Plaintiff does not allege that there was a violation of the one-person, one-vote doctrine with the use of the 2000 census numbers, his claim must be dismissed.

## IV. Conclusion

For these reasons, Defendants' Motion to Dismiss Amended Complaint is **GRANTED.** Plaintiff's Amended Complaint is **DISMISSED.** To the extent that Plaintiff's Amended Complaint raises claims for violation of Indiana statutes, those issues are best resolved in state court where there is likely greater expertise and where an appropriate Indiana appellate court can address those important public policy concerns. The Indiana claims are, therefore, **DISMISSED** without prejudice.

**SO ORDERED.**

**Dated:** July 29, 2011

William G. Hussmann, Jr.
United States Magistrate Judge
Southern District of Indiana

**Electronic copies to:**

Michael A. Gillenwater
GILLENWATER LAW OFFICES
mgillen@insightbb.com

Mickey Kevin Weber
WEBER & WEBER
mkw@weberlegal.com